**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

JEANNETTE M. SMALLEY, LOREN LEE
WIELAND, STACEE PELTZ, and KYLE
PELTZ, for themselves and on behalf of a
class of all others similarly situated,

        Plaintiffs,

vs.                                           Case No. 5:11-cv-514-Oc-37TBS

FLORIDA POWER CORPORATION, and
FLORIDA POWER & LIGHT COMPANY,

        Defendants.

**ORDER**

This cause is before the Court *sua sponte*. On December 27, 2011, the Court ordered the parties to show cause as to whether the Johnson Act, Title 28 U.S.C. § 1342, removes the claims of this lawsuit from the Court's subject matter jurisdiction. (Doc. No. 23.) The parties submitted briefs in response the Order to Show Cause (Doc. Nos. 24, 25), and the Court heard arguments on this issue, as well as the issues raised in Defendants' Motion to Dismiss, on January 27, 2012 (Doc. No. 27).

**BACKGROUND**

This is a putative class action brought by four Florida residents against Florida Power Corporation (i.e., "Progress Energy") and Florida Power & Light Company ("FPL"; and together, the "Electric Utilities").  Plaintiffs seek a declaration that two Florida statutes violate the Contracts and Takings Clauses of the U.S. Constitution. (Doc. No. 1.) The state statutes direct the Florida Public Service Commission to establish a rule-making process by which the Electric Utilities may apply to receive an increase in their tariff rate

to recover certain pre-construction costs associated with the design, licensing and construction of nuclear and clean coal power plants. (*Id.*)[1]

Plaintiffs allege that they are obliged to pay their monthly power bills to the Electric Utilities. (Doc. No. 1, ¶¶ 31-34.) They also allege that the Electric Utilities "have been charging Plaintiffs, and Plaintiffs have paid, as part of their monthly power bills, monetary amounts allowed under these statutes." (*Id.* ¶ 11.) Plaintiffs allege further that their monthly electric power bills do not itemize the amounts charged under these statutes. (*Id.* ¶¶ 12-14.) Plaintiffs contend that the statutes, in essence, permit the Electric Utilities to collect hundreds of millions of dollars from their customers in lieu of turning to the capital markets to raise such funds. (*Id.* ¶¶ 15-18.) As such, Plaintiffs understand the statutes as shifting the risks of financing the planning and construction of nuclear and clean coal power plants from the Electric Utilities to their customers. (*Id.* ¶¶ 15-18.) Plaintiffs contend that the statutes, therefore, allow the Electric Utilities to take Plaintiffs' money for the Electric Utilities' private benefit. (*Id.* ¶¶ 19-30.) Thus, according to Plaintiff, the statutes affect a taking without just compensation and act to impair the implied contractual relationship between the parties.

**APPLICABLE STANDARDS**

In this posture, the factual allegations of the Complaint must be taken as true. *See Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.

---

[1] In 2006, the statutes provided only for the recovery of costs associated with the design, licensing and construction of nuclear power plants. *See* Ch. 2006-230, § 44, at 2648, Laws of Fla. (codified at section 366.93 of the Florida Statutes). The statutes were amended in 2007 to authorized the recovery of costs associated with clean coal power plants. *See* Ch. 2007-117, § 1, at 1295, Laws of Fla. (amending section 366.93 of the Florida Statutes).

2

1993) (applying the standard applicable to a motion to dismiss to a dismissal for want of subject matter jurisdiction raised *sua sponte* by the court). "Dismissal is appropriate where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint." *Id.* (citing *Powell v. United States*, 945 F.2d 374 (11th Cir. 1991)). Accordingly, the court may dismiss a complaint when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Id.*

## DISCUSSION

This Court must inquire whether it has subject matter jurisdiction "at the earliest possible stage in the proceedings." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). If at any time during the proceedings the court determines that it lacks subject-matter jurisdiction, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). If the Court determines that it lacks subject matter jurisdiction, the Court "cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998).

Here, Plaintiffs rest their claims on the Court's federal question jurisdiction, which is provided by Title 28 U.S.C. § 1331. (Doc. No. 1, ¶ 1.) That statute authorizes this Court to hear "all civil actions arising under the Constitution, laws, or treaties of the United States." This jurisdictional grant is broad, but it is not without limits.

Congress has, through the years, withdrawn from this Court's subject matter jurisdiction certain classes of claims. The Anti-Injunction Act, for example, prohibits this Court from entertaining pre-enforcement suits challenging the government's assessment or collection of federal taxes. *See Bob Jones Univ. v. Simon*, 416 U.S. 725 (1974). The Tax Injunction Act prohibits this Court from entertaining suits seeking to "enjoin, suspend

or restrain the assessment, levy or collection of any tax under State law." *See* 28 U.S.C. § 1341. Similarly, the Johnson Act prohibits this Court from entertaining suits seeking injunctions against state orders setting rates for public utilities. *See id.* § 1342.

The Johnson Act states:

The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

(1)  Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2)  The order does not interfere with interstate commerce; and,

(3)  The order has been made after reasonable notice and hearing; and,

(4)  A plain, speedy and efficient remedy may be had in the courts of such State.

*Id.* The Johnson Act limits "the federal courts' interference with the states' own control of their public utility rates." *Tennyson v. Gas Serv. Co.*, 506 F.2d 1135, 1137 (10th Cir. 1974). In passing the Johnson Act, Congress intended to "channel normal rate litigation into the State Courts while leaving Federal Courts free in the exercise of their equity powers to relieve against arbitrary action." *City of Meridian, Miss. v. Miss. Valley Gas Co.*, 214 F.2d 526, 526 (5th Cir. 1954). Put simply, the Johnson Act is meant to "keep constitutional challenges to orders affecting rates out of the federal courts 'lock, stock and barrel.' " *Tennyson*, 506 F.2d at 1138.

Pursuant to the Johnson Act, the Court cannot "enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates." 28 U.S.C. § 1342. Plaintiffs argue that their claims are directed against the state statutes, not a rate order within the meaning of the Johnson Act. (Doc. No. 24, pp. 2-4.) The Electric Utilities contend that

4

Plaintiffs' challenge to the state statutes attacks Florida's ratemaking structure and, therefore, affects utility rates. (Doc. No. 25, pp. 4-12.) Further, the Electric Utilities note that the remedies sought by Plaintiffs – reimbursement and an order directing "any further illegal charges be terminated" – would necessarily affect Florida's utility rate structure and existing rate orders. (*Id.*)

There is no controlling precedent from the Eleventh Circuit on this exact point. The most recent case from the Eleventh Circuit which addresses the substance of the Johnson Act is *Carlin Commincation, Inc. v. Sourthern Bell Telephone & Telegraph Company*, 802 F.2d 1352 (11th Cir. 1986). In *Carlin Communications*, the court was faced with a challenge to a tariff provision that allowed telephone companies to terminate certain services used by 'dial-a-porn' companies. *Id.* at 1354-55. A dial-a-porn company had applied to use the telephone company's pre-recorded message service to leave suggestive messages. *Id.* The telephone company rejected the application because the dial-a-porn company's pre-recorded messages did not conform to the tariff provision. *Id.* The dial-a-porn company then brought a constitutional challenge against the telephone company and the PSC. *Id.*

On appeal, the Eleventh Circuit discussed whether the Johnson Act stripped the district court of jurisdiction. *Id.* at 1355-56. First, the Court noted that, "[a]lthough the Johnson Act explicitly applies only to injunctive relief, it has been judicially extended to bar declaratory judgment and damages as actions as well." *Id.* at 1355. The court also noted that the Johnson Act had been "broadly construed to prohibit federal court actions that indirectly as well as directly affect rate orders." *Id.* at 1356.

The Eleventh Circuit ultimately concluded the Johnson Act did not apply in *Carlin*

5

*Communications*. *Id.* In reaching this conclusion, the court observed that the dial-a-porn company's challenge was directed exclusively against a tariff provision that allowed for the termination of pre-recorded message service based on the content of the message. *Id.* As such, the relief sought by the dial-a-porn company, if granted, "would not in any way affect the rates established by" the Public Service Commission. *Id.* Thus, the court's analysis turned on whether the suit was a challenge to the rates charged by a regulated industry. *Id.*

Unlike *Carlin Communications*, the claims in this case squarely aim to affect the rate schedules under which the Electric Companies are operating. Plaintiffs seek an injunction which would prohibit the Electric Utilities from collecting any money pursuant to the statutes, and an order directing the Electric Utilities to disgorge any funds already collected pursuant to the statutes. (*See* Doc. No. 1, pp. 22-23, 25-26.) Plaintiffs also ask that "any further illegal charges be terminated and the class members be reimbursed." (*Id.* ¶¶ 92-96.) Thus, although they frame their challenge as being brought against the state statutes, it is clear that Plaintiffs' intended relief would "suspend or restrain the operation of, or compliance with," the rate orders promulgated pursuant to the statutes.[2]

As for the Johnson Act's four requirements, they are met in this case. Plaintiffs only claims are based on the statutes' "repugnance of the order to the Federal Constitution." Therefore, the first requirement is satisfied. There is no suggestion that the claims in this case, or the relief sought by Plaintiffs, involve interstate commerce. Rather, Plaintiffs are

---

[2] The Court also finds persuasive the reasoning of the Tenth Circuit in *U.S. West, Inc. v. Tristani*, 182 F.3d 1202, 1209-10 (10th Cir. 1999). In that case, the Tenth Circuit applied the Johnson Act where the plaintiff characterized its claims as being brought against a state statute because, after reviewing the complaint, it was clear the plaintiff sought to affect the procedure used by the state rate-making body to set utility rates.

Florida residents challenging two Florida Statutes which regulate the electric rates charged to electric utility customers in Florida.   Thus, the second requirement is satisfied.

The third requirement – reasonable notice and hearing – is also met. The statutes direct the state Public Service Commission establish a regulatory framework for the recovery of costs associated with the design, licensing and construction of nuclear and clean coal power plants.  The Florida Public Service Commission, which is subject to the Florida Administrative Procedure Act, may only establish such a framework by engaging in a rule-making process that provides notice and hearing.  *See, e.g.*, *ASI, Inc. v. Fla. Pub. Serv. Comm'n*, 334 So. 2d 594, 595 (Fla. 1976) (observing the Florida Public Service Commission is bound by the Florida Administrative Procedure Act); *see also* Fla. Stat. § 120.54 (providing the state rule-making procedure, which includes a requirement for notice and, if requested, hearings).  Further, the statutes require that notice be given and, by directing the Public Service Commission to begin a proceeding under the Florida Electrical Power Plant Siting Act if an Electric Utility petitions for cost recovery, provides an opportunity for a hearing.

As its final requirement, the Johnson Act requires that a "plain, speedy and efficient remedy be had in" the court's of Florida.  It is undisputed that Plaintiffs may bring their constitutional challenges to the statutes in state court.  Indeed, there has already been a suit in a Florida state court raising claims that are the same as the claims raised by Plaintiffs in this case.  *See Balcharan v. Fla. Power Corp.*, No. 2010-CA-159 (Fla. 5th Jud. Cir., Sumter County).  In addition, Plaintiffs may raise the constitutionality of the statutes before the Florida Supreme Court should they choose to appeal an order of the Public Service Commission, a procedure which is being used against these statutes as well.  *See*

*Southern Alliance for Clean Energy v. Graham*, No. SC11-2465 (Fla.).

In sum, the Court concludes that the Johnson Act bars this Court from considering Plaintiffs' claims.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that Plaintiff's Complaint (Doc. No. 1) is dismissed *sua sponte* for want of jurisdiction. The Clerk is directed to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on February 15, 2012.

_____
ROY B. DALTON JR.
United States District Judge

Copies:

counsel of record